# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2939 | **DATE** | Nov. 13, 2001 |
| **CASE TITLE** | Harry Cain    v    Jim Ryan, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendants' motion to dismiss is granted and this action is dismissed without prejudice for lack of jurisdiction.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 1 4 2001 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |

01 NOV 13 PM 4: 51

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HARRY CAIN, )
)
    Plaintiff, )
)   No. 01 C 2939
    v. )
)   Judge Gettleman
JIM RYAN, et al., )
)
    Defendants. )

DOCKETED
NOV 1 4 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Harry Cain is a convicted sex offender who has served his sentence and has been referred for indefinite civil commitment under Illinois' Sexually Violent Persons Commitment Act ("the Act"), 725 ILCS 207/1 et seq. Cain filed this pro se civil rights complaint under 42 U.S.C. § 1983 against Illinois Attorney General Jim Ryan and members of the "Special Evaluation Unit" or SEU.[1] The SEU is composed of mental health professionals within the Illinois Department of Corrections (IDOC) who recommend to the Attorney General whether an inmate shortly to be released, such as Cain, should be committed to the custody of the Department of Human Services as a "sexually violent person" until such time as he can prove that he is no longer dangerous.

Cain alleges that the members of the SEU have failed to establish uniform standards for their evaluation of eligible sex offenders, failed to meet professional standards, are unqualified to administer the tests they use, and misinterpret the results. He also alleges that the race of both the offender and victim are taken into consideration. He alleges that their misconduct has deprived him of his right not to be deprived of liberty without due process of law, his right to remain silent, and his right not to suffer cruel and unusual punishment. He seeks declaratory and injunctive relief "enjoining the defendants and their agents from continuing behavior depriving individuals of liberty," and damages.

Cain was granted leave to proceed in forma pauperis. Defendants Schaab and Ryan have moved to dismiss the complaint. Cain responded by asking that an attorney be appointed for him,

---

[1] Cain named as defendant members of SEU Anthony B. Schaab, Jacqueline N. Buck, Agnes R. Jonas, and Marc Levinson.

stating that he does not have the legal knowledge or ability to answer the motion. The court has declined to appoint counsel, as the court believes the law is clear that this suit cannot go forward. For the following reasons, the motion to dismiss is granted and this action is dismissed as to all defendants.[2]

The Act defines a "sexually violent person" as "a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f). Prior to the release of such a person, the agency having custody is to notify the Attorney General and the State's Attorney for the county in which he was convicted, providing background information and "[a] comprehensive evaluation of the person's mental condition, the basis upon which a determination has been made that the person is subject to commitment under [the Act] and a recommendation for action in furtherance of the purposes of this Act." *Id.* 207/10(b).

Based on this information, the Attorney General or State's Attorney may petition the Circuit Court to declare the person a "sexually violent person." *Id.* 207/15. Though proceedings are civil rather than criminal, *id.* 207/20, "all rules of evidence in criminal actions apply," the respondent has "[a]ll constitutional rights available to a defendant in a criminal proceeding," *id.* 207/35(b), and the state has the burden of proof beyond a reasonable doubt. *Id.* 207/35(d)(2).

If the respondent is found to be a sexually violent person, he is committed to the custody of the Illinois Department of Human Services (IDHS) "until such time as the person is no longer a sexually violent person." *Id.* 207/40(a). The committed person may petition for conditional release, *id.*, 207/60, and IDHS is required to conduct periodic reexaminations of his mental condition within 6 months after initial commitment and at least once every 12 months thereafter to determine whether he has made sufficient progress to be conditionally released or discharged. *Id.*, 207/55(a). The Secretary of IDHS may also petition the committing court to discharge the

---

[2] The remaining defendants, who were not initially served because they were misnamed in the complaint, have failed to answer the complaint after it was deemed amended and they were served. Nevertheless, the arguments made in Ryan and Schaab's motion also apply to them, and the suit is dismissed as to them as well. *See Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993), *cert. denied*, 510 U.S. 1113 (1994); *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988).

committed person from the custody or supervision of IDHS. *Id.* 207/65. The committed person may himself also petition to be discharged, although successive petitions will not be heard without new evidence. *Id.* 207/70.

The state is not required to seek commitment of all persons who potentially qualify as "sexually violent persons." The Attorney General has discretion in choosing those recommended for confinement, and, Cain alleges, this discretion is guided by the recommendations of the defendant members of the SEU. Cain's allegations that the SEU's recommendations are arbitrary or race-based raise colorable constitutional concerns. They also raise parallel questions concerning the applicability of prosecutorial immunity and the qualified immunity of those who act where the law is uncertain. But these concerns are not for this court at this time.

Cain's complaint says almost nothing about the particular facts of his own case, attacking the SEU and the selection process in general terms, but Cain's response to the defendants' motion clarifies the legal status of his present confinement: "[u]nder the [Act], Plaintiff will be controlled by the State for the rest of his life as to who he can date, where he can go and even if he can see his children or grandchildren." The court infers that Cain has been adjudged a "sexually violent person" under the Act and anticipates some form of conditional release. Accordingly, Cain is not attacking the constitutionality of a procedure to be applied to him in the future, but is attacking a procedure that has resulted in a judgment depriving him of a significant measure of liberty.

This distinction has two fatal consequences for this suit. First, Cain lacks standing to seek declaratory or injunctive relief, because he does not claim that there is a reasonable probability that he will again be subject to commitment proceedings under the Act. *Sierakowski v. Ryan*, 223 F.3d 440, 442-43 (7th Cir. 2000); *see also Grendell v. Ohio Supreme Court*, 252 F.3d 828 (6th Cir. 2001)(sanctioned litigant does not have standing to seek declaratory judgment that sanctions provision is unconstitutional). Second, to the extent Cain seeks damages, his suit seeks to overturn a state-court judgment and is barred by the Rooker-Feldman doctrine.

Although a federal district court has jurisdiction to consider the constitutionality of the Act and the procedures applied in selecting sex offenders for indefinite commitment, it has no jurisdiction to review the judgment of a state court in a particular case. While a district court can restrain state officials responsible for enforcement of an unconstitutional statute on the theory that

they lack authority to violate federal law, *see Ex parte Young*, 209 U.S. 123 (1908); *David B. v. McDonald*, 156 F.3d 780, 783 (7th Cir. 1998), it cannot similarly declare a state-court judgment void as unconstitutional. The Rooker-Feldman doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), holds that federal courts other than the United States Supreme Court have no jurisdiction to review state-court judgments, even for unconstitutionality, unless Congress has expressly authorized them to do so.

The Rooker-Feldman doctrine is a consequence of the limited jurisdiction of lower federal courts, which, unlike the Supreme Court, may exercise only power granted to them by Congress. *Rooker* made explicit that this power does not include the power to review state-court judgments. Affirming the dismissal of a suit seeking to have the judgment of an Indiana court declared void as unconstitutional, the Supreme Court stated: "If the [state-court] decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication." *Rooker*, 263 U.S. at 415. The Court noted that the plaintiffs had not timely appealed from the Indiana Supreme Court to the United States Supreme Court, adding "an aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." *Id.* at 416.

An obvious method of indirect attack is to claim that the state-court decision was tainted by unconstitutional procedures. *Feldman* decided two suits brought by rejected applicants to the District of Columbia bar who had been denied waivers of a bar admission rule requiring applicants to be graduates of ABA approved law schools. Having unsuccessfully appealed their rejections to the District of Columbia Court of Appeals, which has the constitutional status of a state supreme court, the applicants brought suit in the federal district court for the District of Columbia, asserting that the rule violated the Fifth Amendment by: (1) creating an irrebuttable presumption that only graduates of approved law schools are fit to practice law, depriving persons who have pursued alternative legal training of liberty and property without due process; (2) irrationally discriminating against persons who have obtained equivalent legal training; and (3) delegating the power to regulate the practice of law to the ABA. Plaintiffs also alleged that the District of Columbia Court

of Appeals had acted unreasonably and discriminatorily in refusing to consider the plaintiff's qualifications when it had repeatedly waived the rule in the past. *Feldman*, 460 U.S. at 469 n.3.

The District Court dismissed the suits, stating that it lacked subject matter jurisdiction to review decisions of the District of Columbia Court of Appeals. The United States Court of Appeals for the District of Columbia Circuit affirmed the dismissals of the plaintiffs' antitrust claims, but remanded for consideration of the constitutional issues, finding that the waiver proceedings were administrative acts rather than judicial decisions. The Supreme Court reversed the Court of Appeals, holding that the proceedings in the District of Columbia Court of Appeals had been judicial, rather than administrative. The Court acknowledged that the district court had subject matter jurisdiction to the extent the plaintiffs had mounted a general challenge to the rule, but that "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Id.* at 483. The Court held that plaintiffs' claim that whether the District of Columbia Court of Appeals had acted arbitrarily and capriciously was "inextricably intertwined" with the District of Columbia Court of Appeals' judicial decisions. On the other hand, constitutional challenges to the constitutionality of the rule itself did not require review of a judicial decision in a particular case, and the District Court could consider them. *Id.* at 487. The Court expressly did not decide whether res judicata -- that plaintiffs' challenges had been, or could have been, raised before the District of Columbia Court of Appeals -- might independently bar the plaintiffs' claims.

The expression "inextricably intertwined" has been less than helpful. One would think that nothing is more "inextricably intertwined" with a judicial decision than the validity of the rule of law it applies, yet by permitting the plaintiffs to challenge the bar admission rule, the Court implicitly held that the constitutionality of the rule was *not* "inextricably intertwined" with the decision not to waive it. The Court failed to point out that *Feldman* presented an atypical case: because one may forseeably apply for admission to the bar more than once, the bar applicants were in the unusual position of claiming both past and future injury from the allegedly unconstitutional rule. Addressed in its aspect as the potential basis for *future* decisions, the rule could be said to

be not "inextricably intertwined" with the judgments applying it. Nevertheless, "inextricably intertwined" is confusing because it suggests an inquiry into the relationship between issues material to the constitutional claim and the state-court judgment, while the real question is the injury sought to be redressed by the federal suit. In its most basic form, acknowledged by *Feldman* as well as its predecessors, *Rooker* and *Atlantic Coast Line R. Co. v. Engineers*, 398 U.S. 281 (1970), it is whether the plaintiff is seeking to undo a state court judgment.

In the Seventh Circuit, the test for whether a claim is "inextricably intertwined" with a state-court judgment is whether the alleged injury resulted from the judgment itself or is distinct from that judgment. If the former, the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional. *Edwards v. Illinois Board of Admissions*, 261 F.3d 723, 728-29 (7th Cir. 2001).

Cain's injury is the direct result of a state-court decision adjudging him a "sexually violent person." This court cannot review the constitutionality of the procedures that resulted in that judgment without calling the validity of that judgment into question, and this is precisely what Cain is asking this court to do. In *Manley v. City of Chicago*, 236 F.3d 392 (7th Cir. 2001), a former Chicago police officer brought suit in federal court alleging that he had been denied due process in an administrative hearing before the Chicago police board that resulted in his termination, a decision that had been upheld by the state courts. The Court of Appeals affirmed the dismissal of his complaint:

> Manley's injury stems directly from the state court judgment upholding the decision to terminate him made by an administrative board. If we were to grant the relief that Manley requests, we would be required to review the circuit court's rulings and the appellate court's finding that his termination was supported by the record. Manley cannot circumvent the decisions of the state courts by seeking damages as opposed to reinstatement in federal court.

*Id.* at 397.

If the federal plaintiff aggrieved by a state-court judgment did not have a reasonable opportunity to raise his or her federal constitutional claims in the state-court proceeding, those claims will not be found to be "inextricably intertwined" with the judgment. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 558 (7th Cir. 1999). But the court in *Manley* noted that the plaintiff had been able to raise his due process claims in his state-court suit for judicial review of

6

the administrative decision; his failure to do so would not bypass the Rooker-Feldman doctrine. *Manley*, 236 F.3d at 397-98. Likewise, Cain has had, or will have, a reasonable opportunity to raise his constitutional arguments as he appeals his commitment order. The court accordingly finds that the issues raised by this suit are inextricably intertwined with the state-court judgment finding Cain to be a "sexually dangerous person," and that the Rooker-Feldman doctrine bars this suit.

In so holding the court respectfully disagrees with our colleague Judge Kennelly's contrary ruling in *Rogers v. Illinois Dept. of Corrections Special Evaluation Unit*, 160 F.Supp.2d 972 (N.D. Ill. 2001). Like Cain, the *Rogers* plaintiffs alleged that unconstitutional criteria were used to select sex offenders for civil commitment proceedings under the Act. In finding the suit not barred by the Rooker-Feldman doctrine, Judge Kennelly relied on Judge Posner's opinion in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995). The plaintiff in *Nesses* had alleged that his state-court suit had been defeated by a conspiracy between the judge and opposing counsel. Although ultimately affirming the dismissal of the suit, the Seventh Circuit stated that it was not barred by Rooker-Feldman:

> To show harm and thus keep the present suit alive, Nesses would have to show that the decision by the Indiana court, in his suit for breach of contract was erroneous, and that, it may appear, *Rooker-Feldman* bars him from doing. But the doctrine is not that broad. Were Nesses merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right ....

*Id.* at 1005. Judge Kennelly reasoned that a person facing commitment as a "sexually dangerous person" has an analogous right "to be judged on the basis of their crimes and their mental states rather than on the basis of the color of their skin or the color of their victims' skin," *Rogers*, 160 F.Supp.2d at 180, and permitted the suit to proceed.

We respectfully believe Judge Kennelly incorrectly relied on the quoted language in *Nesses*. Although *Nesses* has not been overruled, subsequent opinions from the Seventh Circuit have implicitly rejected Judge Posner's thesis, that if the plaintiff alleges that the state-court judgment resulted from the violation of an "independent right," Rooker-Feldman is inapplicable. In *Garry v. Geils*, 82 F.3d 1362 (7th Cir. 1996), the Seventh Circuit confronted a case quite similar to

*Nesses*, but with one significant difference: in *Nesses* the federal plaintiff had been a losing plaintiff in state court, while in *Garry* the federal plaintiffs had been the losing state-court defendants.

The *Garry* plaintiffs' land had been condemned by the Village of Bensenville, Illinois, and they alleged their land had been chosen for condemnation in retaliation for their support of opposition candidates for the Bensenville Village Board. Presumably the plaintiffs had an "independent right" analogous to that of the *Nesses* plaintiff not to have judicial proceedings initiated against their interests for political reasons. Nevertheless, the Court of Appeals found that the Rooker-Feldman doctrine deprived the district court of jurisdiction. While the court cited *Nesses*, it drew a lesson from it at variance with the language quoted above:

> In *Nesses*, we asserted that *Homola [v. McNamara*, 59 F.3d 647 (7th Cir. 1995)] stood for the principle that if Rooker-Feldman is to be kept distinct from res judicata, Rooker-Feldman "ought to be confined to cases in which the defendant in the state court is seeking to undo a remedial order of some sort." 68 F.3d at 1004. We noted that such a situation "is unmistakably a collateral attack on the state court's judgment," whereas "[w]hen a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the doctrine that blocks him is res judicata." *Id.*

*Garry*, 82 F.3d at 1367 n.9. For *Garry*, as in subsequent cases, "injury due to a state court decision remains the essential inquiry when determining whether Rooker-Feldman applies." *Id.* at 1368. A losing state-court defendant (or prospective defendant who appears as a plaintiff in a preemptive declaratory judgment action) has been injured by the action of the court, and Rooker-Feldman applies; on the other hand, the losing plaintiff, as in *Nesses,* has not been "injured" by the court's failure to respond to his claims, but is barred by *res judicata* from raising them again in a federal court. "[T]he typical federal claim of a party who was previously a defendant in state court is one alleging injury due more to the 'wrongful' state judgment than to any particular act of the opposing party. Thus Rooker-Feldman forbids lower federal courts to accept jurisdiction over the case; and the res judicata claim is not even reached." *Garry*, 82 F.3d at 1367-68 (footnote omitted).

In *Long v. Shorebank Development Corp.*, the Court of Appeals reversed the dismissal of a suit arising out of an eviction order fraudulently procured by the landlord's attorney. Citing both *Nesses* and *Garry*, the court distinguished between the plaintiff's federal claim under the Fair Debt Collection Practices Act and her claim that she had been deprived of property without due process

of law in violation of 42 U.S.C. § 1983. The former, the court held, alleged an "injury" independent of the eviction and was not barred by Rooker-Feldman, while the latter claim alleged injuries resulting solely from the state-court judgment. *Long*, 182 F.3d at 555-57. The court nevertheless permitted plaintiff's due-process claim to proceed on remand, stating that because the defendant attorney's fraud had "effectively precluded" her from raising her claims in the state-court proceeding, they could not be considered "inextricably intertwined" with the state judgment. *Id.* at 557.

In a recent decision, the Seventh Circuit followed *Garry* in distinguishing "between 'a federal claim alleging injury caused by a state court judgment (necessarily raising the Rooker-Feldman doctrine) and a federal claim alleging a prior injury that a state court failed to remedy (raising a potential res judicata problem but not Rooker-Feldman).'" *Rizzo v. Sheahan*, 266 F.3d 705, 714 (7th Cir. 2001)(quoting *Garry*, 82 F.3d at 1366). The plaintiff in *Rizzo*, like the plaintiff in *Nesses*, had lost in state court. A deputy sheriff, she had been terminated by the Cook County Sheriff's Department purportedly for misrepresenting her educational background, and her dismissal had been upheld by the Illinois courts. She claimed in her federal suit that the investigation into her background was commenced in retaliation for her objection to sexual harassment, and she sued under Title VII. The Court of Appeals reasoned that "because the injury Rizzo alleges in this court was incurred before she sought relief in state court," i.e., the state court did not *cause* her injury, but only failed to remedy it, Rooker-Feldman did not apply to her retaliation claim. (The defendant had waived the affirmative defense of res judicata.)

The Seventh Circuit has apparently reconciled the holdings of *Garry* and *Nesses* by limiting *Nesses* to cases where the federal plaintiff alleges "a prior injury that a state court failed to remedy." *See also Long*, 182 F.3d at 555; *Centres, Inc., v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998). In so doing the court has implicitly rejected that part of *Nesses'* reasoning upon which Judge Kennelly relied in *Rogers*. Judge Posner in *Nesses* acknowledged that the plaintiff suffered no independent *injury* that did not result from the allegedly tainted state-court judgment, *Nesses*, 68 F.3d at 1005, but focused on the invasion of an independent *right*, arguing that if the lack of an injury apart from the judgment meant that Rooker-Feldman barred the plaintiff's claim, it would be inconsistent with cases where, for example, police officers are sued

under § 1983 for fabricating evidence resulting in a state-court conviction.³/ *Id.* It was accordingly irrelevant to the court's reasoning in *Nesses* that the plaintiff had been a state-court plaintiff rather than a defendant. It is clearly not irrelevant to *Garry* and its successors, since only a state-court plaintiff can allege "a prior injury that a state court failed to remedy."

In a 1997 opinion, *Newman v. Indiana*, 129 F.3d 937 (7th Cir. 1997), Judge Posner himself appears to have abandoned the approach to the Rooker-Feldman doctrine set forth in the quote from *Nesses*. The *Newman* plaintiffs, an Indiana couple, had been thwarted in their attempt to adopt a child from Maryland. After the plaintiffs had lawfully taken the child to Indiana, the Maryland child-welfare agency decided not to permit the adoption to proceed and had obtained an ex-parte order directing the plaintiffs to return the child to Maryland. An Indiana court enforced the Maryland order and separately denied the plaintiffs' petition to adopt the child. After an emergency hearing, the judge had ordered the plaintiffs to remain in his chambers while the sheriff removed the child from their home. The Indiana court's rulings were affirmed on appeal. The plaintiffs' federal suit sought damages for religious discrimination and violations of due process they claimed had frustrated their desire to adopt the child, and for the temporary deprivation of their liberty.

In disposing of this "obviously meritless case," *id.,* 129 F.3d at 940, Judge Posner noted that any attempt to adopt or obtain custody of the child would be barred by the Rooker-Feldman doctrine, *id.* at 941, but then explained that a damage claim would be barred as well:

---

³/ Judge Posner acknowledged that such claims can be brought only after the conviction has been reversed, vacated, or impugned by writ of habeas corpus, *Nesses*, 68 F.3d at 1005, citing *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that if a claim for damages under § 1983 would necessarily imply the invalidity of a criminal conviction, the suit cannot proceed until the underlying conviction has been invalidated. *Id.* at 487. Judge Posner's opinion in *Nesses* did not explore the consequence: if the underlying conviction is no longer in force, the federal plaintiff cannot be said to be seeking review of a state-court judgment and no Rooker-Feldman problem arises.

Conceptually, the Rooker-Feldman bar is deemed jurisdictional, while *Heck* rests expressly on analogy to the common-law tort of malicious prosecution and implicitly on grounds of federalism by way of *Preiser v. Rodriguez*, 411 U.S. 485 (1973), and the conflict between § 1983, which does not require exhaustion of state remedies, and federal habeas corpus, which does. Judge Posner in *Nesses* noted that although *Heck* cites *Rooker*, the Rooker-Feldman doctrine plays no role in the Court's reasoning. *Nesses*, 68 F.3d at 1005. What is interesting is that *Heck* does *not* also cite *Feldman*, and *Feldman*'s extension of *Rooker* to issues "inextricably intertwined" with state court judgments is strikingly similar to *Heck*'s exclusion of claims that "necessarily imply the invalidity of [plaintiff's] conviction or sentence." Perhaps Justice Scalia found *Feldman* conceptually fuzzy, or wished to avoid basing the decision on a jurisdictional pronouncement that could have wider implications. Nevertheless, it is evident that the roots of the Rooker-Feldman doctrine, *Younger* abstention, and *Heck* intertwine, arising from the concern that the expansion of federal power under § 1983 not overwhelm the state courts.

So far as the claims of religious discrimination and denial of due process are concerned, we can imagine the Newmans' arguing simply that being subjected (as they claim to have been) to an anti-Semitic plot, garnished with procedural irregularities, that embraced almost the whole officialdom of two states . . . caused them emotional distress for which they can be compensated by receiving an award of damages. Their argument is more intricate. It is that the defendants' machinations caused them emotional distress and related harm *by preventing them from keeping Laura.* Their alleged right to keep her is the essential link between the defendants' misconduct and the damages caused. But that was the claim of right litigated adversely to them in the Indiana suits. Relitigation is barred by *Rooker-Feldman*, and also by res judicata. That most of the 54 defendants in the present suit were not parties to the previous suits is irrelevant. Nonparties are usually, and here would surely be, allowed to use collateral estoppel defensively . . . . But the deeper problem is the *Rooker-Feldman* doctrine, which cannot be gotten around by changing the *dramatis personae.* The premise of a suit to obtain damages for wrongful interference with the Newmans' keeping Laura is that the decisions by the Indiana courts were incorrect. We could not give the Newmans the relief they seek without in effect reviewing and reversing the Indiana courts.

*Id.* at 942.

It would seem that the plaintiffs in *Newman* could have claimed the same sort of "independent right" as the plaintiff in *Nesses, i.e.*, the "right" to have their adoption petition evaluated by state agency officials and judges free from religious bias. If *Newman* had been decided consistent with *Nesses*, the plaintiffs' claim would have been barred by res judicata alone.

Accordingly, the court finds that Judge Posner's dictum in *Nesses*, that a claim that a state-court judgment induced by the violation of an "independent right" may be barred by res judicata but not Rooker-Feldman, does not state the law in this circuit. Only a claim alleging an *injury* independent of the state-court decision avoids the bar of Rooker-Feldman. Although Cain may have had an abstract "right" not to be selected for commitment proceedings arbitrarily or in a discriminatory manner, he suffered no *injury* until the state court acted -- first finding probable cause to detain him beyond the expiration of his sentence and then adjudicating him a "sexually violent person." Cain's claim that his selection for commitment proceedings under the Act was either arbitrary or discriminatory is, therefore, an attack on the state court judgment that is barred by the Rooker-Feldman doctrine.

Because Rooker-Feldman is jurisdictional, the court need not consider the alternative grounds raised by defendants, either an extension of the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), or abstention under *Younger v. Harris*, 401 U.S. 37 (1971).[4]

If Cain's adjudication as a "sexually dangerous person" is not overturned on appeal, and he remains subject to a continuing restriction of liberty, he will be able to petition this court for a writ of habeas corpus, which is available to persons challenging unconstitutional civil confinement as well as penal incarceration. *See, e.g., Seling v. Young,* 531 U.S. 250 (2001); *Addington v. Texas,* 441 U.S. 418 (1979). Because 28 U.S.C. § 2241 gives district courts express authority to issue the writ, habeas corpus is an exception to the Rooker-Feldman doctrine. *Centres,* 148 F.3d at 702 n.3.

But before Cain can seek a writ of habeas corpus in federal court he must have first exhausted any available state-court remedies, giving the state's highest court a full and fair opportunity to consider each of his federal claims. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *McAtee v. Cowan,* 250 F.3d 506 (7th Cir. 2001). Since it is virtually certain that this prerequisite has not been met, this court will not attempt to convert this suit into a habeas corpus action. *See Moore v. Pemberton,* 110 F.3d 22 (7th Cir. 1997). Defendants' motion to dismiss is granted, and this action is dismissed without prejudice for lack of jurisdiction.

DATED: _November 13, 2001_

_Robert W. Gettleman_
Robert W. Gettleman, Judge
United States District Court

---

[4] The court notes that *Younger* abstention is premised upon the federal court's obligation to avoid interference in *ongoing* state proceedings. *Edwards,* 261 F.3d at 277-78. Although it is likely that Cain is currently appealing the commitment decision, this does not appear in the complaint. Defendants take the position that Cain's commitment proceeding is "ongoing" because the commitment order is subject to periodic review. While there is authority for that position, *Nelson v. Murphy,* 44 F.3d 497, 501 (7th Cir. 1995), *cert. denied,* 516 U.S. 1027 (1995), the possibility that state action can evade federal judicial review by presenting a continually moving target raises constitutional difficulties, as Judge Cudahy recognized in his dissent in *Nelson.*